# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

*Salih Wasim Lutfi*                    *15450-021*

_____            _____

_____            _____

_____            _____

*(Enter above the full name of the plaintiff*      *(Inmate Reg. # of each Plaintiff)*
*or plaintiffs in this action).*

**VERSUS**                           **CIVIL ACTION NO.** *5:15-2063*
                                     *(Number to be assigned by Court)*

*R. Devereaux;*
*K. Wimbush; T. Painter;*

*(Enter above the full name of the defendant*
*or defendants in this action)*

**FILED**

FEB 2 3 2015

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

## COMPLAINT

I.    **Previous Lawsuits**

    A.    Have you begun other lawsuits in state or federal court dealing with the same
        facts involved in this action or otherwise relating to your imprisonment?

            Yes  ✓          No _____

1

B.  If your answer to A is yes, describe each lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline).

    1.  Parties to this previous lawsuit:

        Plaintiffs:  _Salih W. Lutfi_____

        _____

        Defendants:  _Camden County Sheriff Dept._

        _____

        _____

    2.  Court (if federal court, name the district; if state court, name the county);

        _Woodbine Court House, Camden County_

    3.  Docket Number:  ___N/A_____

    4.  Name of judge to whom case was assigned:

        _____N/A_____

    5.  Disposition (for example: Was the case dismissed?  Was it appealed?  Is it still pending?

        _I Filed it but did not pursue it._
    _No!_____

    6.  Approximate date of filing lawsuit:  _Sometime in 2010_

    7.  Approximate date of disposition:  ___N/A____

**II.**   **Place of Present Confinement:** _Beckley F.C.I. P.O. Box 350 Beaver, WV. 25813_

    **A.**   Is there a prisoner grievance procedure in this institution?

        Yes ____✓____   No _____

    **B.**   Did you present the facts relating to your complaint in the ~~state~~ *Federal* prisoner grievance procedure?

        Yes ____✓____   No _____

    **C.**   If you answer is YES:

        **1.**   What steps did you take? _Filed a complaint to Mid-Atlantic Regional, Ass. Warden Ms. Swain, Inspector General, EEO, filed grievances Administrative Remedy._

        **2.**   What was the result? _Nothing was done_

    **D.**   If your answer is NO, explain why not: _____

**III.**   **Parties**

(In item A below, place your name and inmate registration number in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

    **A.**   Name of Plaintiff: _Salih W. Lutfi #15450-021_

        Address: _F.C.I. Beckley P.O. Box 350 Beaver, WV 25813_

    **B.**   Additional Plaintiff(s) and Address(es): _____

        _N/A_

3

(In item C below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item D for the names, positions, and places of employment of any additional defendants.)

C.     Defendant: _R. DEVEREAUX_____

is employed as: _Disciplinary Hearing Officer_____

at _F.C.I. Beckley_____

D.     Additional defendants: _K. Wimbush (S.I.S.); T. Painter (counselor);_

~~illegible~~

~~illegible~~

_____

## IV.     Statement of Claim

State here as briefly as possible the <u>facts</u> of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

(1st claim) The (D.H.O.) R. Devereaux is not acting as an independent, impartial decision maker. He has violated my due process. He is infact, working as an investigator. (S.I.S.) K. Wimbush ended the excessive (30) day investigation on 8-15-2014. However, the D.H.O. (3) months later (changes the incident date from 7-17-2014 7:45 p.m. to 7-16-2014) in his report (see attached). He also (changes the date that staff became aware of Hancock's injuries from 7-18-2014 to 7-17-2014.) He did this after I made him aware of the fact that staff did not know when this alleged incident took place (via my written statement given to him at my hearing on 11-25-2014.)

4

**IV.    Statement of Claim (continued):**

(see attached) I was placed in the S.H.U. the morning of 7-17-2014 8:30 a.m. (see Administrative Detention Order attached) This incident took place on the evening of 7-17-2014 at 7:45 p.m. (see attached) (4½) months later the D.H.O. is still investigating, after the investigation was over. He is falsifying legal documents in order to maliciously convict me. The D.H.O. shows his malfeasant character in his report (see page 3 of 5 last paragraph) D.H.O. notes that section 11 contained (two) seperate and distinct incidents which occurred between Luth' and Harrod. If that is true, why did only Luth' receive an incident report, when the D.H.O. admits that Harrod was involved...
(continued)
a'ttachment

**V.    Relief**

State briefly exactly what you want the court to do for you.  Make no legal arguments. Cite no cases or statutes.

The (D.H.O.) R. DEVEREAUX) NEEDS to be fired. He cant be trusted. K. Wimbush is an incompetent (SIS) investigator, who doesn't NEED to work for S.I.S anymore. T. Painter NEEDS this incident logged into his personal employee file permanently.

And to order Mid-Atlantic Regional to accept my appeal for the (101) assault and expunge it immediately with all rights restored.

**V.      Relief (continued)):**

_____

_____

_____

_____

_____


**VII.   Counsel**

A.      If someone other than a lawyer is assisting you in preparing this case, state the person's name:

_____ N/A _____

B.      Have you made any effort to contact a private lawyer to determine if he or she would represent you in this civil action?

Yes _____      No __✓__

If so, state the name(s) and address(es) of each lawyer contacted:

_____

_____

If not, state your reasons: _____ Don't know any _____

_____

C.      Have you previously had a lawyer representing you in a civil action in this court?

Yes _____      No __✓__

If so, state the lawyer's name and address:

_____

_____

Signed this ___30th___ day of ___January___, 20_15_.

_Salih W. Lutfi_

_____

_____

_____

Signature of Plaintiff or Plaintiffs


I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___1-30-15___.
                (Date)


_Salih W. Lutfi_
_____
Signature of Movant/Plaintiff


_____
Signature of Attorney
(if any)

Statement of Claim (Cont... 1st Claim)

in another incident? Because the D.H.O. and the institution are bias, discrimitive, and very selective in whom they want to pursue (see page 4 of 5 first paragraph of D.H.O.'s report) In the D.H.O.'s own written words..."Should the institution elect to charge Lutfi in the second incident which occurred later in the EVENing..." Its very clear that the D.H.O. only wants Lutfi charged, no mention of Harrod being charged for fighting.

The charging authority (institution) knew infact, that there was only one incident. But this did not hamper this vicious D.H.O.'s attempts to try and make one incident into two. He's trying to play investigator again. Fact, the incident report clearly states that at," approximately 7:45 p.m Harrod was burned and at approximately 9:00 p.m. Harrod waited for Lutfi to exit food service." This is not later in the EVENing as the D.H.O. maliciously lies in his report. His "boy that cried wolf" attempts are irrelevant to the facts.

Fact, Harrod (see report) waited on Lutfi to confront him. D.H.O. knew very well that the incident report was full of lies. Yet, he willfully ignored the truth that Harrod and I were fighting and Harrod confronted Lutfi and attacked. (Please subpoena the emails from inmate to staff on 7-16-2014 and 7-17-2014) I also have many witnesses available.

The institution and D.H.O. are hostile and discrimitively refuse to change Harrod to pursue me only. Because they are infact, retaliating against me for Filing previous grievances on fellow staff members. (page 8)

(2nd Claim)

(S.I.S.) K. Wimbush, is holding my incoming and outgoing mail 1 to 3 weeks past their post-marked dates. Months ago she had officer J. Teal and another officer confiscate all my mail and my then cell mate Marcus Miller's mail so that she could read all our mail. She saw that in my legal mail, I had prepared grievances written on some staff members. So, she is holding my mail in retaliation.

She has in fact, falsified the (Second) incident report. (See both attached) Upon my (30th) day in the SHU. I received the (First) incident report delivered by Lt. M. Austin on 8-15-14 8:15 p.m. signed and dated 8/15/-2014 12:35 p.m. by K. Wimbush. The (Second) incident report was delivered by Lt. M. Cooper on 11-12-14 1610 (3) months later and signed by K. Wimbush dated 8-15-2014 12:35 p.m. Both incident reports clearly show (two) distinct, different signatures from K. Wimbush. K. Wimbush did not sign both of these incident reports on the same day 8/15/2014 12:35. This is an obvious lie.

Her investigation lasted an excessive (30) days. She also had an additional (3 1/2) months to go back and review the incident report at any time, to check for any mistakes. Fact, she believed through her own investigation that the incident occurred on 7-17-2014 at 7:45 p.m. and staff became aware of Harrod's injuries on 7-17-2014. Both incident reports will reflect the obvious facts. (page 9)


(~~~~~ 3rd Claim)

T. Painter, I called him as my staff REPRESENTATIVE for my hearing on 11-25-2014 with D.H.O. T. Painter chose to not EVEN speak to me at all. Instead, he allied with E. Stock whome I currently had grievances filed upon. Both show up the morning of my hearing via video with my witnesses. T. Painter did not know, and could not know what I NEEDED him to do as far as gathering evidence for my defense.

Instead of acting as my staff representative, he was infact trying not to help me and work with staff to try and convict me. If he doesn't come SEE what I need, I can't put up a proper defense.

The DHO disregarded this fact and had the hearing anyway.

(page 10)

<u>My Statement</u>                    written copy

To: D.H.O.;
                                        11-25-14

          I am requesting that this incident report
series (101) be thrown out, based on the civil violations, policy
violations, and the fact that this report is based on
false information. It poisoned the whole report. Staff
took an excessive (30) days to investigate, and write
this report. Then had an additional (90) something
days to go back and review this case. A period that
lasted over (4) months.
          Due to the lack of due diligence, to many mistakes
were made. Upon careful review, staff should have known
that I was already detained in the S.H.U. the morning
of the alleged incident. (SEE: Administrative Detention
Order 7-17-2014 8:04 A.M.)
          Staffs report clearly states that this alleged incident
took place later that night. (SEE: Incident Report -
Date of incident 7-17-2014 7:45 p.m.) According
to this A.D.O. I was already detained in the S.H.U.
when this incident took place. Staff does not know
what day this alleged incident took place. This
incident report is false and erroneous and has
no merit.
                              By: Salih W. Lutfi
                                   #15450-021
                                   Salih W. Lutfi

                         page 11

Page 1

IN THE NAME OF THE ( Violation of B.O.P. Policy, which is a
"10:O.K.O." ( Violation of my DUE PROCESS, which is a
( Violation of my Constitutional Rights.

Progstat: ① Pursuant to 541.5(a) Disipline PROCESS
Inmates will ordinarily RECEIVE the incident REPORT within 24 hours of staff becoming aware of inmates involvement in the incident.

Violation (1.a) I RECEIVED my incident REPORT on my 30th day of being in the S.H.U.

Progstat: ② Pursuant to 541.5(b) Investigation (Paragraph 2)
Staff conduct the investigation as promptly as possible. The investigating officer is ordinarily appointed within 24 hours of the incident REPORT.

Violation (2.a) The investigation lasted an EXCESSIVE 30 days and was not promptly done.

Progstat: ③ Pursuant to 541.5(b) Investigation (Paragraph 1)
The investigating officer must be FDC-certified and may not be the employee REPORTing the incident or otherwise be involved in the incident.

Violation (3.a) U.M. Snow; C.M. Stock; Chaplain Hitley all are not FDC-certified. Yet, they were all involved in questioning and obtaining information along with S.I.S. from many inmates during this investigation. They were not all appointed by the Warden to INVESTgate

ProgStat: (4) Pursuant to 541.5(b) Investigation (paragraph 3)
When it appears likely that the incident may involve criminal prosecution, the investigating officer suspends the investigation. Staff may not question the inmate until the F.B.I. or other investigative agency releases the incident report for administrative processing.

Violation (4.a.) When it appeared likely that the incident may involve criminal prosecution, Staff continued its investigation lasting an EXCESSIVE 30 days. Many inmates were questioned during that time.

ProgStat: (5) Pursuant to 541.5(2) Statements (Paragraph 2)
The investigating officer provides a copy of the incident report to the inmate at the beginning of the investigation unless there is good cause for later delivery, such as absence of the inmate from the institution or a medical condition that argues against delivery.
If the investigation is delayed, any employee may deliver the charge(s) to the inmate. The reason for this delay must be documented in the discipline record.

Violation (5.a) Investigating officer did not provide a copy of the incident report at the beginning of the investigation. It was an EXCESSIVE 30 days.

Page 3

lation (5.b.) There was no good cause shown for delay in delivery of report. Inmate was confined in the S.H.U. the entire time of the investigation.

lation (5.c.) There is no documented reason for delay in the discipline record.

Reg stat: (a) Pursuant to 541.5 (A) Incident Report (paragraph 2) When staff witness or reasonably believe that a violation of Bureau Regulations has been committed; Staff must prepare an incident report and forward it to the Lieutenant. The Lieutenant will enter the incident report into Sentry.

Violation (6.a.) At the preliminary stage this NEVER happened.

lation (6.b.) The last preparations (cooking food stuff) for inmates participating in Ramadan was NEVER DONE in a secure, safe, or healthy environment. Approximately between the hours of 6:00 p.m to 10:00p. every single night of Ramadan... there was no staff supervision EVER. There was no Food Service staff or anyone else in the kitchen monitoring at all. The day after this alleged incident staff were present. The lack of supervision by staff, creates an unsafe and unhealthy environment for all.

BP-A0308
AUG 11

**ADMINISTRATIVE DETENTION ORDER**

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

BECKLEY FCI
Institution

Date/Time : 07-17-2014 08:04

TO       : Special Housing Unit Officer

FROM     : LT. GIBSON, LIEUTENANT                                    , (Name/Title)

SUBJECT : Placement of _____ LUTFI, SALIH W _____ , Reg. No. 15450-021 , in Administrative Detention

_____ (a) Is Pending a hearing for a violation of Bureau regulations;

__X__ (b) Is Pending investigation of a violation of Bureau regulations;

_____ (c) Is Pending investigation or trial for a criminal act;

_____ (d) Is to be admitted to Administrative Detention

_____ (1) Since the inmate has requested admission for protection;

I hearby request placement in Administrative Detention for my own protection.

Inmate Signature/Register No.: _____

Staff Witness Printed Name Signature: _____

_____ (2) Since a serious threat exists to individual's safety as perceived by staff, although person

has not requested admission; referral of the necessary information will be forwarded to the

UDC/DHO for appropriate hearing.

_____ (e) Is Pending transfer or is in holdover status during transfer.

_____ (f) Is Pending classification; or          /

_____ (g) Is terminating confinement in Disciplinary Segregation and has been ordered into Administrative

Detention by the Warden's designee.

It is this Correctional Supervisor's decision based on all the circumstances that the above named inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the institution because*

SIS Investigation

Therefore, the above named inmate is to be placed in Administrative Detention until further notice. The inmate received a copy of this Order on

(date/time) 7/17/14 8:30a

Staff Witness Signature/Printed Name    J-Ball          Date 7/17/17

* In the case of DHO action, reference to that order is sufficient. In other cases, the Correctional supervisor will make an independent review and decision, which is documented here.
Record Copy - Inmate Concerned (not necessary if placement is a result of holdover status); Copy - Captain; Copy - Unit Manager; Copy - Operation Supervisor - Administrative Detention Unit; Copy - Central File

Prescribed by P5270   (Replaces BP-308(52) of JAN 1988.)

page 15

7/17/2014

BP-A0288
AUG 11

*First*

U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

## Part I - Incident Report

| | | | |
|---|---|---|---|
| 1. Institution: FCI Beckley | | | |

| 2. Inmate's Name<br><br>Salih Lufti  *Luffi* (IMA) | 3. Register Number<br><br>15450-021 | 4. Date of Incident<br><br>7/17/2014 | 5. Time<br>Approx.<br>7:45 p.m. |
|---|---|---|---|
| 6. Place of Incident<br><br>Camp Food Service | 7. Assignment<br><br>SHU Unassgn | 8. Unit<br><br>Evergreen | |
| 9. Incident     Assaulting any person  (Serious) | | 10. Prohibited Act Code(s) 101 | |

11. Description Of Incident (Date: 8/15/2014   Time:   11:30 am  Staff became aware of incident)

On August 15, 2014, an SIS Investigation determined through medical assessments and interviews that on July 17, 2014, Salih Lufti, Reg. No. 15450-021, seriously assaulted Darry Harrod, Reg. No. 42293-037, by throwing hot cooking oil on him 2 times and then later striking him on the left side of his face and left wrist with a rock. Specifically, Lufti and Harrod were in the kitchen of Camp Food Service preparing for the Ramadan meal. At approximately 7:45 p.m., Harrod was in the oven pulling out a pan of steaks when Lufti threw hot oil on his arms. Harrod went into the inmate restroom and shut the door.  Harrod was washing the oil off of his arms when he felt the oil hit him again in the back. Harrod immediately removed the 2 shirts he was wearing and turned to find Lufti standing behind him with the metal bucket containing the hot oil hanging from a mop handle.  Another inmate stepped in front of Harrod to prevent Lufti from throwing more oil on him.  At approximately 9:00 p.m., Harrod waited for Lufti to exit Food Service from the Ramadan meal. As Harrod and Lufti approached each other on the sidewalk Lufti pulled a rock from his right pants pocket and struck Harrod in his left eye. As Lufti swung the rock a second time Harrod blocked it with his left arm and used his right hand to knock the rock out of Lufti's hand. Harrod did not report his injury's to staff until the following morning July 18, 2014, at approximately 4:00 a.m.  Harrod was transported via ambulance to a local hospital. The emergency room staff determined they could not treat Harrod and he would need transported to the burn unit at Cabell Huntington Hospital. Harrod was transported via ambulance to Cabell Huntington within a few hours.  It was determined Harrod had suffered second and third degree burns on over 30% of his body which included his arms, back and head.  On July 22, 2014, Harrod had surgery due to the severity of the burns on his back.  Harrod was a patient at Cabell Huntington Hospital from July 18, 2014, until August 4, 2014, a total of 18 days. In addition to the burns Harrod sustained an abrasion on his left wrist, left cheek and a black eye (Left eye) from the assault by Lufti using the rock as a weapon. Lufti sustained a healing 1/4" abrasion to Right dorsal hand and a 1/8" abrasion to left index finger at the base of nail.

| 12. Typed Name/Signature of Reporting Employee<br>K. Wimbish, SIS Technician | 13. Date And Time<br>8/15/2014 12:35 p.m. |
|---|---|
| 14. Incident Report Delivered to Above Inmate By<br>(Type Name/Signature) *M Austin* | 15. Date Incident<br>Report Delivered<br>8-15-14 | 16. Time Incident<br>Report Delivered<br>8:15pm |

## Part II - Committee Action

17. Comments of Inmate to Committee Regarding Above Incident

_____

_____

_____

18. A. It is the finding of the committee that you:

_____ Committed the Prohibited Act as charged.
_____ Did not Commit a Prohibited Act.
_____ Committed Prohibited Act Code(s) _____

B. _____ The Committee is referring the Charge(s) to the DHO for further Hearing.

C. _____ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days.

19. Committee Decision is Based on Specific Evidence as Follows:

_____

_____

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act)

*Page 16*

BP-A0288
AUG 11

**INCIDENT REPORT** CDFRM

*Second*

**U.S. DEPARTMENT OF JUSTICE**

**FEDERAL BUREAU OF PRISONS**

### Part I - Incident Report

| 1. Institution: FCI Beckley | | | |
|---|---|---|---|
| 2. Inmate's Name  Salih Lutfi | 3. Register Number  15450-021 | 4. Date of Incident  7/17/2014 | 5. Time  Approx.  7:45 p.m. |
| 6. Place of Incident  Camp Food Service | 7. Assignment  SHU Unassgn | 8. Unit  Evergreen | |
| 9. Incident    Assaulting any person   (Serious) | | 10. Prohibited Act Code(s) 101 | |

11. Description Of Incident (Date: <u>8/15/2014</u>   Time:   <u>11:30 am</u> Staff became aware of incident)

On August 15, 2014, an SIS Investigation determined through medical assessments and interviews that on July 17, 2014, Salih Lutfi, Reg. No. 15450-021, seriously assaulted Darry Harrod, Reg. No. 42293-037, by throwing hot cooking oil on him 2 times and then later striking him on the left side of his face and left wrist with a rock. Specifically, Lutfi and Harrod were in the kitchen of Camp Food Service preparing for the Ramadan meal. At approximately 7:45 p.m., Harrod was in the oven pulling out a pan of steaks when Lutfi threw hot oil on his arms. Harrod went into the inmate restroom and shut the door. Harrod was washing the oil off of his arms when he felt the oil hit him again in the back. Harrod immediately removed the 2 shirts he was wearing and turned to find Lutfi standing behind him with the metal bucket containing the hot oil hanging from a mop handle. Another inmate stepped in front of Harrod to prevent Lutfi from throwing more oil on him.  At approximately 9:00 p.m., Harrod waited for Lutfi to exit Food Service from the Ramadan meal. As Harrod and Lutfi approached each other on the sidewalk Lutfi pulled a rock from his right pants pocket and struck Harrod in his left eye. As Lutfi swung the rock a second time Harrod blocked it with his left arm and used his right hand to knock the rock out of Lutfi's hand. Harrod did not report his injury's to staff until the following morning July 18, 2014, at approximately 4:00 a.m.  Harrod was transported via ambulance to a local hospital. The emergency room staff determined they could not treat Harrod and he would need transported to the burn unit at Cabell Huntington Hospital. Harrod was transported via ambulance to Cabell Huntington within a few hours.  It was determined Harrod had suffered second and third degree burns on over 30% of his body which included his arms, back and head.  On July 22, 2014, Harrod had surgery due to the severity of the burns on his back.  Harrod was a patient at Cabell Huntington Hospital from July 18, 2014, until August 4, 2014, a total of 18 days. In addition to the burns Harrod sustained an abrasion on his left wrist, left cheek and a black eye (Left eye) from the assault by Lutfi using the rock as a weapon. Lutfi sustained a healing 1/4" abrasion to Right dorsal hand and a 1/8" abrasion to left index finger at the base of nail.

| 12. Typed Name/Signature of Reporting Employee  K. Wimbish, SIS Technician | 13. Date And Time  8/15/2014 12:35 p.m. |
|---|---|
| 14. Incident Report Delivered to Above Inmate By  (Type Name/Signature) | 15. Date Incident  Report Delivered  11-12-15 14 | 16. Time Incident  Report Delivered  1610 |

### Part II - Committee Action

17. Comments of Inmate to Committee Regarding Above Incident

18. A. It is the finding of the committee that you:
_____ Committed the Prohibited Act as charged.
_____ Did not Commit a Prohibited Act.
_____ Committed Prohibited Act Code(s) _____

B. _____ The Committee is referring the Charge(s) to the DHO for further Hearing.

C. _____ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days.

19. Committee Decision is Based on Specific Evidence as Follows:

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act)

*Page 17*

**U.S. DEPARTMENT OF JUSTICE**   **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Lutfi Salih, W.          15450-021     Still      Beckley
  LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A– INMATE REQUEST** The D.H.O. R. Devereaux, is not acting as an independent, impartial decision maker who was not an investigator or other wise significantly involved in the incident. I gave the D.H.O. written complaints about the handling of my case, due process violations and that I had not spoken with my staff representative T. Painter. D.H.O. disregarded this at my hearing and instead used my complaints as a template and countered them in his report. I never spoke with T. Painter before or after my hearing. E. Stock whom I had filed grievances on before and T. Painter. Both showed up for my hearing via video. E. Stock had no right to be there when I currently had complaints about her. After mentioning and D.H.O. Reading my complaints. The D.H.O. says, he doesn't see my due process violations and that I am not getting off on a technicality." I pointed out to the D.H.O. the fact that SIS K. Wimbush the investigating officer and staff do not know when this alleged incident took place. The investigation lasted an excessive (30) days and also had an additional (90) days to go back an review. The D.H.O. tells me, it's a typo." And he contacts K. Wimbush and coerced her into changing the dates on the incident report (4½) months later. D.H.O. lies in his report saying that the investigation report has the correct dates (SEE administrative Note page 3 of 5) Same page: The SIS investigation determined through medical...

1-09-15                    Salih W. Lutfi
DATE                    SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____          _____
DATE                    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**          CASE NUMBER: _____

                        CASE NUMBER: _____

*Page 18*

**Part C– RECEIPT**

Return to: _____
       LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____          _____
DATE                    RECIPIENT'S SIGNATURE (STAFF MEMBER)

                                BP-229(13)
                                APRIL 1982

assessments and interviews that on July 17, 2014 Salih Lutfi seriously assaulted Darcy Harrod @ 7:45 p.m.— I was taken to the SHU the morning of 7-17-2014 @ 8:30 a.m.— (4½) month later the D.H.O. has the incident date changed from 7-17-2014 to 7-16-2014. D.H.O. also changed the date staff became aware of Harrod's injuries from 7-18-2014 to 7-17-2014 (4½ months later) (3) months after the investigation was done. How is the D.H.O still investigating. He is not suppose to be a part of the investigation. How can I have a fair hearing? There's no due process here. The P.H.O. is falsifying incident reports along with K. Wimbush. After a (30) day investigation by K. Wimbush, she and Lt. M. Austin both signed my incident report on 8/15/2014 delivered to me. (3) months later, a second incident report is signed by K. Wimbush and Lt. M. Cooper. M. Cooper puts the correct date the incident report is delivered on 11-12-2014 1610 p.m. But K. Wimbush who signs the very same report, fails to add the correct date for which she really signs this document. Instead, she relies upon the same date from her previous report (3) months earlier. She has falsified this incident report, both reports have different signatures, but same dates 8/15/2014. This is a lie.

Even though the changing authority (Institution) knew infact that this was one incident. The P.H.O. refuses to accept reality and attempts to make one incident into two. It was not later that evening as he would like you to believe. Harrod was burnt, left the kitchen, changed clothes and met with some of his homeboys and then waited on us to come out of the kitchen after eating, all within a hour. Fact, Sunset was late that time of year around 8:30 to 8:50 p.m. We had to pray, eat, and clean up all before recall. He was burnt right before we ate. He waited outside on the sidewalk with the lock in hand. When we came out of the kitchen, Harrod and his homeboy are blocking the sidewalk. So, as I walk up with Williams, I see Harrod has a lock in hand, so I reach down and pick up a rock. Harrod is 6'5" 300 and something lbs. I'm 5'7" 168 lbs, he was a bully that's why he got burnt. He had already assaulted the white guy Brazinski and I wasn't about to be next. Harrod walked towards me and swung and we fought infront of atleast 100 inmates. Please review emails from 7-16-2014 and 7-17-2014. Harrod should have been charged as well. But the institution and D.H.O. are bias and selective in their prosecution. It is discriminative because of previous complaints filed by me against staff. This was a chance to retaliate. D.H.O. deliberately chose to rely on a false report. D.H.O. admits in his own report that he knew about the fight and so did the changing authority, yet only I was charged. Even if one could say there were two separate incidents. Why was only inmate Salih Lutfi #15450-021 charged? S.I.S and D.H.O. also disregarded the initial statements given by Harrod, Lane, and Williams which was adverse to their later statements. That Harrod caught seizure and fell into the grease." to the reporting officer.

The investigation was not done promptly. When it appeared likely that criminal prosecution would be pursued. The investigation was not stopped, it lasted an excessive (30) days. E. Stoele, U.M. Snow, and Captain Hilley are not all IDC certified, yet all were questioning inmates and investigating along with S.I.S. The incident report was not given to me within 24 hours staff became aware of the incident. There was no good cause shown for later delivery of incident report. I received the incident report (30) days after placed in the SHU. At the preliminary stage staff once became aware of the incident, never wrote an incident report. Also, during Ramadan there was no staff supervision at all. Expungement of (101) is  —2—  required.

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JANUARY 22, 2015

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      MID-ATLANTIC REGIONAL OFFICE

TO  : SALIH W LUTFI, 15450-021
      BECKLEY FCI    UNT: CAMP GP    QTR: Z02-014UAD
      P.O. BOX 1280
      BEAVER,  WV 25813


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 808052-R1       REGIONAL APPEAL
DATE RECEIVED  : JANUARY 21, 2015
SUBJECT 1      : DHO APPEAL - COMBINED (PROCEDURES, EVIDENCE & SANCTIONS)
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT SUBMIT YOUR REQUEST OR APPEAL ON THE PROPER
                 FORM (BP-9, BP-10, BP-11) (CIRCLE ONE)

*Page 20*

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 9, 2014

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      MID-ATLANTIC REGIONAL OFFICE

TO  : SALIH W LUTFI, 15450-021
      BECKLEY FCI     UNT: CAMP GP     QTR: Z02-014UAD
      P.O. BOX 1280
      BEAVER, WV 25813

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID        : 797433-R1       REGIONAL APPEAL
DATE RECEIVED    : OCTOBER 7, 2014
SUBJECT 1        : UNPROFESSIONAL, INAPPROPRIATE CONDUCT OR MISCONDUCT BY STAFF
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON 1: THE ISSUE YOU RAISED IS NOT SENSITIVE. HOWEVER,
                 WE RETAINED YOUR REQUEST/APPEAL ACCORDING TO
                 POLICY   YOU SHOULD FILE A REQUEST OR APPEAL AT
                 THE APPROPRIATE LEVEL VIA REGULAR PROCEDURES.

REJECT REASON 2: YOU RAISE MORE THAN ONE ISSUE/RELATED ISSUE OR APPEAL MORE
                 THAN ONE INCIDENT REPORT (INCIDENT NUMBER).   YOU MUST
                 FILE A SEPARATE REQUEST/APPEAL FOR EACH UNRELATED ISSUE
                 OR INCIDENT REPORT YOU WANT ADDRESSED.

REJECT REASON 3: YOU MAY ONLY SUBMIT ONE CONTINUATION PAGE, EQUIV. OF ONE
                 LETTER-SIZE (8.5 X 11) PAPER.   TEXT ON ONE SIDE.   THE
                 TEXT MUST BE LEGIBLE.

REJECT REASON 4: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

**DISCIPLINE HEARING OFFICER REPORT**
**U.S. DEPARTMENT OF JUSTICE**

**BP-S305.052 MAY 94**
**FEDERAL BUREAU OF PRISONS**

*Z02-012*

| INSTITUTION | FCI BECKLEY | INCIDENT REPORT NUMBER | | 2617606 |
|---|---|---|---|---|
| INMATE NAME | LUTFI, SALIH | REG NO | 15450-021 | UNIT | EVERGREEN |
| DATE OF INCIDENT | 07-16-2014 | DATE OF INCIDENT REPORT | 08-15-2014 |
| OFFENSE CODE(S) | | 101 | |
| SUMMARY OF CHARGES | | Assaulting any Person (Serious) | |

### I.  NOTICE OF CHARGE(S)

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on (date)   11-12-2014   at (time)   1610   (by staff member)  M. Cooper

B. The DHO Hearing was held on (date)   11-25-2014   at (time)   0930

C. The inmate was advised of his/her rights before the DHO by (staff member):

W. Westcott                     on (date)   11-14-2014       and a copy of the advisement of rights form is attached.

### II.  STAFF REPRESENTATIVE

| A. Inmate waived right to staff representative. | Yes: | | No: | XX |
|---|---|---|---|---|

B. Inmate requested staff representative and   T. Painter          Appeared.

C. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:   N/A

| D. Staff representative | N/A | appointed |
|---|---|---|

E. Staff representative statement: Counselor T. Painter appeared at the hearing with inmate Lutfi and each acknowledged they were ready to proceed with the hearing. T. Painter stated that he discussed this incident with inmate Lutfi and was ready to assist him as necessary.  At the conclusion of the hearing T. Painter stated that inmate Lutfi had received a fair hearing and that appropriate sanctions were imposed. *(lie)*

### III.  PRESENTATION OF EVIDENCE

| A. Inmate admits | | denies | X | the charge(s). |
|---|---|---|---|---|

B. Summary of inmate statement: Inmate Lutfi appeared before the DHO and refused to provide a statement when asked directly by the DHO if he threw hot cooking oil on inmate Harrod while they were in the dining facility.  Lutfi did state that the second altercation noted between him and Harrod that occurred later that evening on the sidewalk was a fight.  Lutfi stated Harrod approached him with a lock in his hand so he picked up a rock from the ground and swung at Harrod.  Lutfi stated other inmates were present and would verify his statement. *(lie) Harrod swung First*

C. Witness(es):

| 1. The inmate requested witness(es). | Yes: | XX | No: | |
|---|---|---|---|---|

**DISCIPLINE HEARING OFFICER REPORT**
U.S. DEPARTMENT OF JUSTICE

**BP-S305.052 MAY 94**
**FEDERAL BUREAU OF PRISONS**

| |
|---|
| 2. The following persons were called as witnesses at this hearing and appeared. (Include each witnesses' name, title, reg number and statement as appropriate.) |

Inmate J. Graham, Reg. No. 16953-084: Inmate Graham stated he did not witness any altercation between inmate Lutfi and inmate Harrod.

Inmate R. Cooper, Reg. No. 10437-088: Inmate Cooper stated he did not witness any altercation between inmate Lutfi and inmate Harrod.

Inmate B. Sharpe, Reg. No. 44218-074: Inmate Sharpe stated he did not witness any altercation between inmate Lutfi and inmate Harrod.

Inmate R. Hillard, Reg. No. 14182-084: Inmate Hillard stated he did not witness any altercation between inmate Lutfi and inmate Harrod.

Inmate M. Watts, Reg. No. 00209-111: Inmate Watts stated he did not witness any altercation between inmate Lutfi and inmate Harrod.

Inmate S. Harris, Reg. No. 43956-039: Inmate Harris stated he did not witness any altercation between inmate Lutfi and inmate Harrod.

| |
|---|
| 3. The following persons requested were not called for the reason(s) given. |

Inmate Acosta.  Staff could not identify any inmate by that name or any name that was similar.  This information was provided to Lutfi prior to the hearing.  Lutfi stated it was not necessary to keep searching and that he would proceed without this inmate's statement.

| 4. Unavailable witnesses were requested to submit written statements and those statements received were considered. | Yes | | No | | N/A | X |
|---|---|---|---|---|---|---|

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:
-SIS Investigative Report
-Memorandums provided by A. Hussion, S. Erskine, T. Marabillas
-Photographs and medical assessment for inmate Harrod
-Photographs of inmate bathroom
-Medical assessment for inmate Lutfi

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate.  The confidential information was documented in a separate report.  The confidential information has been (confidential informants have been) determined to be reliable because:   N/A

IV. FINDINGS OF THE DHO

| X | A. The act was committed as charged. | | |
|---|---|---|---|
| | B. The following acts were committed: | | |
| | C. No prohibited act was committed: Expunge per Program Statement 5270.09 | | |

V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)

**ADMINISTRATIVE NOTE:**  Lutfi's staff representative and all inmate witnesses appeared at the hearing via video.

Page 2 of 5

*Page 23*

**DISCIPLINE HEARING OFFICER REPORT**
**U.S. DEPARTMENT OF JUSTICE**

**BP-S305.052 MAY 94**
**FEDERAL BUREAU OF PRISONS**

**ADMINISTRATIVE NOTE:**  The incident report was suspended on 08-15-2014 and referred to the AUSA for prosecution.  The incident report was released for administrative processing on 11-12-2014.  The DHO finds all time frames were met as established in policy.

**ADMINISTRATIVE NOTE:** Typographical errors were noted by the DHO and acknowledged by inmate Lutfi. The incident report notes the assault occurred on 07-17-2014, when in fact it occurred on the evening of 07-16-2014. Additionally, staff became aware of Harrod's injuries on the morning of 07-17-2014, not 07-18-2014.  The correct dates are all documented in the SIS Investigative Report. These errors did not hamper Lutfi's ability to prepare a defense.

Lutfi's due process rights were read and reviewed with him by the DHO at that time of the hearing. Lutfi stated that he understood his rights and acknowledged receiving a copy of the incident report.  Lutfi acknowledged the UDC discussed with him his rights at the discipline hearing. Lutfi raised no issues about the discipline process to this point.

The DHO finds that Lutfi committed the prohibited act of assaulting any person (serious).  To make this finding the DHO relied on the following statement provided by the reporting officer which was contained in the Incident Report:

On August 15, 2014, an SIS Investigation determined through medical assessments and interviews that on July 17, 2014, Salih Lutfi, Reg. No. 15450-021, seriously assaulted Darry Harrod, Reg. No. 42293-037, by throwing hot cooking oil on him 2 times and then later striking him on the left side of his face and left wrist with a rock. Specifically, Lutfi and Harrod were in the kitchen of Camp Food Service preparing for the Ramadan meal. At approximately 7:45 p.m., Harrod was in the oven pulling out a pan of steaks when Lutfi threw hot oil on his arms. Harrod went into the inmate restroom and shut the door. Harrod was washing the oil off of his arms when he felt the oil hit him again in the back. Harrod immediately removed the 2 shirts he was wearing and turned to find Lutfi standing behind him with the metal bucket containing the hot oil hanging from a mop handle. Another inmate stepped in front of Harrod to prevent Lutfi from throwing more oil on him. At approximately 9:00 p.m., Harrod waited for Lutfi to exit Food Service from the Ramadan meal. As Harrod and Lutfi approached each other on the sidewalk Lutfi pulled a rock from his right pants pocket and struck Harrod in his left eye. As Lutfi swung the rock a second time Harrod blocked it with his left arm and used his right hand to knock the rock out of Lutfi's hand. Harrod did not report his injury's to staff until the following morning July 18, 2014, at approximately 4:00 a.m. Harrod was transported via ambulance to a local hospital. The emergency room staff determined they could not treat Harrod and he would need transported to the burn unit at Cabell Huntington Hospital. Harrod was transported via ambulance to Cabell Huntington within a few hours.  It was determined Harrod had suffered second and third degree burns on over 30% of his body which included his arms, back and head.  On July 22, 2014, Harrod had surgery due to the severity of the burns on his back.  Harrod was a patient at Cabell Huntington Hospital from July 18, 2014, until August 4, 2014, a total of 18 days. In addition to the burns Harrod sustained an abrasion on his left wrist, left cheek and a black eye (Left eye) from the assault by Lutfi using the rock as a weapon. Lutfi sustained a healing 1/4" abrasion to Right dorsal hand and a 1/8" abrasion to left index finger at the base of nail.

Inmate Lutfi provided no statement to the Investigating Lieutenant.  Lutfi provided no statement to the UDC.  Lutfi appeared before the DHO and refused to provide a statement when asked directly by the DHO if he threw hot cooking oil on inmate Harrod while they were in the dining facility.  Lutfi did state that the second altercation noted between him and Harrod that occurred later that evening on the sidewalk was a fight.  Lutfi stated Harrod approached him with a lock in his hand so he picked up a rock from the ground and swung at Harrod.  Lutfi stated other inmates were present and would verify his statement.

Inmates J. Graham, R. Cooper, B. Sharpe, R. Hillard, M. Watts and S. Harris were called and appeared as witnesses for inmate Lutfi.  Inmate Lutfi stated these inmates were present on the compound when the altercation between Harrod and himself to place.  Lutfi stated these inmates would verify his statement that Harrod approached him on the sidewalk and the altercation that occurred between them was a fight.  Each inmate was specifically asked if they could identify inmate Lutfi and inmate Harrod.  Each acknowledged that they could.  Each inmate was asked if they observed any type of altercation between Lutfi and Harrod on the evening of 07-16-2014.  Each inmate in turn stated that they did not witness any type of altercation between Lutfi and Harrod.

The DHO considered Lutfi's statement along with the statements of his witnesses.  The DHO noted section 11 contained two separate and distinct incidents which occurred between Lufi and Harrod.



**DISCIPLINE HEARING OFFICER REPORT**
**U.S. DEPARTMENT OF JUSTICE**

**BP-S305.052 MAY 94**
**FEDERAL BUREAU OF PRISONS**

Although they occurred between the same two inmates, location and time make them separate acts which could have resulted in two separate incident reports. However, in this case, the charging authority (institution) chose to combine the two separate incidents within one report. Since the incidents are separate, neither relies upon the other to support it. Given this, the DHO only considered the earlier incident which occurred within the kitchen of the camp food service. Should the institution elect to charge Lutfi in the second incident which occurred later in the evening on the sidewalk, the DHO will consider at that time all evidence, to include statements from the inmates involved and any witnesses. Therefore, Lutfi's statement which referenced the incident on the sidewalk, and those of his witnesses, were found to be irrelevant.

As to the incident which occurred in the kitchen of the camp food serve, the DHO noted Lutfi refused to provide any statement. The DHO finds it reasonable to believe if Lutfi had truly not committed this misconduct, he would take every opportunity presented to him, especially at the hearing which determines whether there is sufficient evidence to support the charge, and at the very least, provide a statement claiming his innocence. Since this did not occur, the DHO can only infer that Lutfi does not disagree with the charge levied against him. Therefore, the DHO used Lutfi's silence to draw an adverse inference against him.

In addition to Lutfi's silence, the DHO considered the SIS Investigative Report and photographs of inmate Harrod and the inmate bathroom. Contained within the report are documented interviews conducted with inmates Harrod, Troy Williams Reg. No. 22074-056 and Lloyd Layne Reg. No. 34183-183. During Harrod's interviews conducted on 07-17-2014 and 07-29-2014, he identified inmate Lutfi as the person who assaulted him with hot cooking oil. Harrod stated Lutfi threw hot cooking oil on his arms when he was removing steaks from the oven. He stated when he went to the bathroom to clean up, Lutfi again threw hot cooking oil at him, striking him in the back and head. During interviews with inmates Williams and Layne, both acknowledged that they were present in the kitchen at the time of the incident. Both stated they observed Lutfi throw and strike inmate Harrod with hot cooking oil. The photographs taken of inmate Harrod show extensive burns on his head, back, and arms. The photographs of the inmate bathroom in food service show grease/oil stains on the toilet, floor and walls. The photographs, along with the medical documentation, clearly support the elements of the offense for the greater severity charge of assault.

Based on the on the description of the incident as noted in section 11, supporting documentation and the adverse inference drawn from Lutfi's silence, the DHO gives greater weight to the reporting officer's statement and finds Lutfi committed the prohibited act of Code 101, Assaulting any Person (Serious).

| VI. SANCTION OR ACTION TAKEN |
|---|

101- Disallow 41 Days Good Conduct Time
    Forfeit 100 Days Non-Vested Good Conduct Time
    60 Days Disciplinary Segregation, suspended pending 180 days clear conduct
    Monetary Fine in the Amount of $300 Dollars
    12 Months Loss of Commissary, Telephone, Email and Visiting

| VII. REASON FOR SANCTION OR ACTION TAKEN |
|---|

The action/behavior on the part of any inmate to seriously assault another person, whether that person is an inmate or staff member, poses a serious threat not only to himself, but to the health, safety and welfare of all inmates and staff. In the past, serious assaults have resulted in retaliation assaults causing even more injuries, and even deaths.

The sanction of the disallowance of Good Conduct Time is imposed to comply with the inmate discipline policy regarding recommended disallowance of Good Conduct Time when an inmate is found to have committed a Greatest Severity prohibited act.

The sanction of the forfeiture of Non-Vested Good Conduct Time is imposed to impress upon Lutfi the seriousness of his misconduct and to deter future misconduct of a similar nature.

The sanctions of Disciplinary Segregation, Commissary, Telephone, Email and Visiting Restriction are imposed to punish Lutfi for his actions in relation to having committed this prohibited act and to serve as a deterrent to keep others from committing similar acts.

**DISCIPLINE HEARING OFFICER REPORT**
U.S. DEPARTMENT OF JUSTICE

BP-S305.052 MAY 94
**FEDERAL BUREAU OF PRISONS**

VIII. APPEAL RIGHTS: The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action.  The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure.  A copy of this report has been given to the inmate.

| | Yes | X | No | | |
|---|---|---|---|---|---|

IX. **DISCIPLINE HEARING OFFICER**

| Printed Name of DHO | Signature of DHO | Date |
|---|---|---|
| R. Devereaux | | 12-16-2014 |

| Report delivered to inmate by: | DATE 12-23-14 | TIME |
|---|---|---|

**ACKNOWLEDGMENT OF RECEIPT**

I acknowledge receipt of a copy of the above report on the date indicated below.

| PRINTED NAME OF INMATE LUTFI, SALIH | REGISTER NUMBER 15450-021 |
|---|---|

| INMATE'S SIGNATURE | DATE RECEIVED 12-23-14 | TIME RECEIVED |
|---|---|---|

Page 5 of 5

*page 26*

Dear Clerk;                                          1-29-15

  Hello, my name is <u>Salih W. Lutfi, #15450-021</u>
Unfortunately, the staff here are very hostile and
stop our mail from going out. So, I had to use
another inmate to send this to you.
  Also, for a month now I've tried to get
my unit team to fill out the "CERTIFICATE"
they are mad at me for previous grievances
Filed against them. I've waited a month
trying to get it done, but they will not due
it.

(  I have given you authority to RECIEVE
any information NEEDED from my account
at this institution. )

( Note: I am awaiting transfer, so I will
write you once I'm at my NEW address.
No NEED to send me back anything here,
Not sure if I'll get it anyways. )

  Thank You!!

( P.S. Enclosed are (3)
different lawsuits )

     Sincerely;
     Salih W. Lutfi
     #15450-021
     Salih W. Lutfi



Jaren Holley 46297-007
Beckley
Federal Correctional Institution
P.O. Box 350
Beaver, WV 25813

Legal
Mail

PRIORITY MAIL
TRACKED INSURED

Clerk, United States District Court
110 North Heber St. Room 119
Beckley, WV 25801



U.S. POSTAGE PAID
BECKLEY, WV
25813
$0.00

UNITED STATES POSTAL SERVICE®
USPS TRACKING #

